

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **MICHAEL ALLISON and**<br>**TRACY ALLISON,** | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO: 1:11-CV-342** |
| | § | |
| **J.P. MORGAN CHASE BANK, N.A.,** | § | |
| **and CHASE HOME FINANCE,** | § | |
| | § | |
| *Defendants.* | § | |

### OPINION AND ORDER ON MOTION TO DISMISS

In accordance with 28 U.S.C. § 636(c), the Local Rules for the United States District Court for the Eastern District of Texas, the parties' consent and order of the District Court, the above-captioned civil action is before the undersigned United States Magistrate Judge for consideration of all matters, trial and entry of judgment. *See Order of Reference* (doc. #16). The Court previously issued a brief order granting in part and denying in part the defendants' *Motion to Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, Motion for More Definite Statement Pursuant to Rule 12(e)* (doc. #4). *See Order* (doc. #30). The Court now issues this opinion and order specifically setting forth the findings and legal conclusions in support of that ruling.

I.      **Background**

A.      Procedural Background and Plaintiffs' Claims

On June 11, 2011, the plaintiffs, Michael and Tracy Allison,("the Allisons" or"plaintiffs"),

fled suit in the 163rd Judicial District Court of Orange County, Texas.  *See Original Petition, Exhibit*

*to Notice of Removal* (doc. #1-1) (hereinafter "Original Petition").  The Allisons filed suit against

defendants JP Morgan Chase Bank, N.A. and Chase Home Finance LLC ("Chase" or "defendants").

Plaintiffs allege that on August 7, 2007, they obtained a mortgage loan with Chase Home Finance

for the property and residence located at 186 Tiger Lily Street, Bridge City, Texas.  *See Original*

*Petition*, at p. 2.  The Allisons live in this residence with their three children, one of whom is

disabled.  *See id.* at pp. 2-3.  They further state that in September 2008, their residence was flooded

as a result of Hurricane Ike.  *Id.* at p. 3.  The Allisons allege that they lost their home and business

but continued to make their mortgage payments at this time, exhausting their life savings.  *Id.*

The Allisons further aver that in the spring and summer of 2009, they "got behind on their

mortgage loan payments."  *Id.*  They state that Chase "suggested and offered to modify the terms of

the mortgage loan, a program for persons affected by Hurricane Ike."  *Id.*  The plaintiffs further state

that Chase "represented to the Allisons that [they] are required to be behind on their mortgage

payments for two months to qualify for the modification program."  *Id.*  The plaintiffs "did as they

were instructed and did not pay the mortgage for two months."  *Id.*  The plaintiffs state that over the

course the next sixteen months, Chase, "either by negligence or intentional mismanagement,

clumsily performed the administering of the modification to the loan."  *Id.*  The Allisons allege that

despite their "diligence and cooperation," "the employees and departments at Chase, through Chase's

own internal bureaucracy, were incapable of sending and communicating between its own

departments."  *Id.*  Chase would lose documents and/or property received from the Allisons and the

modification process had to "start all over again."  *Id.*  The Allisons received a notice of foreclosure

but Chase advised that the foreclosure notice was a mistake and the modification process was ongoing. *See id.* at pp. 3-4. The Allisons contend that this process occurred several times. *Id.* at p. 4.

On May 1, 2011, Chase notified the plaintiffs that their mortgage loan had been transferred from Chase Finance, LLC ("Chase Finance") to JP Morgan Chase Bank, N.A. ("JP Morgan"). *Id*. On May 5, 2011, Chase served the Allisons with a forcible detainer and eviction suit filed in the Justice of the Peace Court, Precinct 3, in Orange County, Texas. *Id.* The Allisons contend that Chase improperly filed the eviction suit and that Chase did not have standing to file the suit because the loan had been transferred to JP Morgan before Chase Finance filed the suit. *Id.*

Based on these factual allegations, the Allisons assert the following causes of action. First they contend that the defendants are vicariously liable for the acts of their employees. *See id.* The plaintiffs also specifically claim causes of action against both defendants for breach of contract, detrimental reliance, promissory estoppel, quantum merit, breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud, fraud by nondisclosure, tortious interference with a contract, participatory liability - conspiracy, participatory liability - aiding and abetting, intentional infliction of emotional distress, negligence, negligence per se, conversion, violation of the Texas Theft Liability Act, trespass to real property, private nuisance, negligent hiring, negligent entrustment, negligent supervision, negligent hiring/retention, gross negligence, malicious prosecution, defamation, and wrongful foreclosure in violation of the Texas DTPA. *Id.* at pp. 4-16. The plaintiffs are seeking actual damages, exemplary damages, injunctive relief precluding the taking of their property, attorneys' fees, costs, interest and judgment for title to and possession of the property at issue. *See id.* at p. 17. The Original Petition is the live pleading before the Court.

On July 25, 2011, the Chase defendants filed their notice of removal in this Court, asserting federal jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. *See Notice of*

*Removal.*  The case was originally assigned to United States District Judge Marcia A. Crone, but, as stated above, eventually transferred to the docket of the undersigned United States Magistrate Judge by consent of the parties.  The plaintiffs filed a motion to remand, which Judge Crone denied, finding that diversity jurisdiction existed (doc. #9).

In the interim, on August 2, 2011, the Chase defendants filed their motion to dismiss or alternative motion for more definite statement pursuant to Federal Rules of Civil Procedure 12(b)(6) and (e), which is still pending before the Court for purposes of this order.  The parties then engaged in informal negotiations in an attempt to resolve the case.  In light of the parties' ongoing settlement negotiations, the Court granted plaintiffs four extensions of time to respond to the motion to dismiss. After several months passed without a resolution, the Court also issued a scheduling order on January 9, 2012, setting the case for final pretrial conference and trial on November 5, 2012. The Court has since reset the pretrial conference and  trial date for September 2013 after the parties requested a continuance.

B.      The Pending Motion and Plaintiffs' Response

*The Defendant's Motion to Dismiss*

Shortly after removing the case to federal court, the Chase defendants filed the motion to dismiss, or alternatively, for a more definite statement (doc. #4).  In the motion, Chase contends that each of the plaintiffs' purported causes of action fail as a matter of law.  Chase also argues that the plaintiffs have failed to plead sufficient facts to support each cause of action.  *See Motion*, at p. 2.

More specifically, Chase argues that the breach of contract claim should be dismissed because plaintiffs fail to attach the contract or state the terms of the contract which Chase allegedly breached.  *Id.*  at p. 5.  Chase also contends that the breach of contract claim is barred by the Statute of Frauds.  *Id.* at p. 6.  Chase next argues that Texas does not recognize detrimental reliance as an independent cause of action and that the plaintiff's promissory estoppel claim is also barred by the

4

statute of frauds. *Id.* at p. 9. The defendant further contends that quantum meruit is barred by the existing contract and there is no fiduciary duty between a debtor and a creditor. *Id.* at pp. 11-12.

Chase next argues that the plaintiffs' tort claims for negligent misrepresentation, fraudulent misrepresentation, fraud, fraud by nondisclosure, tortious interference, intentional infliction of emotional distress, negligence, negligence per se, conversion, trespass, private nuisance, negligent hiring/retention, gross negligence, and defamation should all be dismissed under the economic-loss doctrine. *Id.* at p. 13. Specifically, Chase contends that because the plaintiffs' tort claims are premised upon communication between plaintiffs and Chase concerning their mortgage, the alleged tort damages arise from claims that are dependent on the existence of a contract. *Id.* at p. 14. Therefore, Chase argues that the tort claims should be dismissed under the economic loss doctrine. *Id.*

Chase also argues that the plaintiffs' negligent misrepresentation claim not only fails because of the economic loss doctrine, but also because it is based on the promise of future conduct. *Id.* Chase further alleges that the plaintiffs' claims for fraudulent misrepresentation, fraud, and fraud by nondisclosure are insufficiently pled to withstand dismissal. *Id.* at p. 15. Chase also contends that the tortious interference claim is barred by the doctrine of economic loss. *Id.* at p. 16. Next, Chase argues that the plaintiffs' claim for intentional infliction of emotional distress should be dismissed because the plaintiffs have not pled any act or omission on the part of Chase which would rise to the necessary level to support a cause of action for intentional infliction of emotional distress. *Id.* at p. 18. Chase further argues that all of plaintiffs' claims based in negligence should be dismissed based on the economic loss doctrine. *Id.* at p. 19. Chase also argues that the plaintiffs' conversion claim is insufficiently pled and that the deed of trust at issue defeats the plaintiffs' Theft Liability Act Claim. *Id.* at p. 21. Chase argues that the plaintiffs have failed to state a claim for trespass to real property or for malicious prosecution. *Id.* at pp. 21-22. Chase again asserts that the economic loss

doctrine precludes the plaintiffs' private nuisance claim. *Id.* at p. 22.

Chase next argues that the plaintiffs' defamation claim must fail under Texas law because statements made in the course of quasi-judicial proceedings cannot be the basis of a defamation claim under Texas law. *Id.* at pp. 23-24. Finally, Chase argues that the DTPA and wrongful foreclosure claims should be dismissed because the plaintiffs have failed to state a DTPA claim and they have failed to plead the requisite elements for a wrongful disclosure claim. *Id.* at pp. 24-25.

*Plaintiffs' Response to the Motion*

On December 29, 2011, the plaintiffs filed their response to the motion to dismiss (doc. #20). In response, the plaintiffs address each of their claims in response to the defendants' arguments regarding dismissal. The plaintiffs also generally contend that they have met the requisite pleading standards under state law and alternatively request that the Court allow them to replead their claims. *See Response*, at pp. 1-2. More specifically, the plaintiffs contend that they have pled sufficient facts to support a breach of contract claim. Plaintiffs also state that they pled promissory estoppel as an alternate to their breach of contract claim and argue that the defendants have not "conclusively proved an affirmative defense" which would support dismissal of the promissory estoppel claim. *Id.* at pp. 13-14. The Allisons also contend that, accepting their pleadings as true, they have sufficiently pled an alternative claim for quantum meruit. *Id.* at p. 15. Plaintiffs also admit that although Texas law does not usually provide for a special relationship between borrower and lender, in this case they have pled extraordinary circumstances supporting a relationship of trust and confidence. *Id.* at pp. 15-16.

Next, the plaintiffs address the defendants' arguments regarding the economic loss doctrine. They contend that their causes of action are not only contractual in nature and Chase's liability extends beyond the contractual. *Id.* at p. 17. Plaintiffs contend that they have pled injuries which are independent and separate from the economic losses recoverable under a breach of contract claim.

*Id.* at p. 18.

As to their negligent misrepresentation claim, plaintiffs contend that they have pled facts not only limited to promises of future conduct which support a claim for negligent misrepresentation as pled. *Id.* Plaintiffs next contend that they have pled a sufficient claim for fraud because they are not relaying on oral statements made prior to the original note and deed of trust but rather are relying on statements or agreements made after the original loan. *Id.* at pp. 19-20. Plaintiffs further argue that Chase's argument that it could not have tortiously interfered with its own note and deed of trust is misplaced. *Id.* at p. 20. Specifically, the plaintiffs contend that they had other contracts with other entities as well as were dependent on the payment of their homeowners' insurance premium through Chase's escrow agent. *Id.* Therefore, the plaintiffs contend that Chase's foreclosure interfered with these contracts. *Id.*

Plaintiffs next contend that their intentional infliction of emotional distress claim is not precluded by the economic loss because the plaintiffs are seeking noncontractual damages for other injuries. *See id.* at p. 21. Similarly, the plaintiffs also allege that their negligence claims survive dismissal because they have pled for economic damages not related to their mortgage contract. *Id.* The plaintiffs next contend that they have properly pled claims for conversion, private nuisance, malicious prosecution, defamation, and wrongful foreclosure. *Id.* at pp. 22-27. They also admit that their claims for trespass and under the DTPA are insufficient as pled in their Original Petition, but they seek leave to amend their pleading to correct any deficiencies. *See id.* at pp. 23, 25. Finally, the plaintiffs argue that they may bring a claim under the Theft Liability Act based on the defendants' actions. *Id.* at pp. 22-23.

## II.    Discussion

A.    Relevant Legal Standards

*Rule 12(b)(6) Motion to Dismiss*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).   To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *In re Great Lakes,* 624 F.3d at 210 (quoting *Twombly*, 550 U.S. at 555).   The relevant federal pleading standard is articulated in the Supreme Court's decisions in *Twombly* and *Iqbal*, *supra*.   In *Twombly* and *Iqbal*, the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also Iqbal*; 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

In deciding whether the complaint states a valid claim for relief, the court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *In re Great Lakes,* 624 F.3d at 210.   The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*   Quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).   While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.  *Iqbal*, 129 S. Ct. at 1940.   The inquiry focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits.  *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009).   On a motion to dismiss, the court is therefore directed to look solely at the allegations on the face of the pleadings.  *See id.; see also Southwestern Bell Telephone, L.P., v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008) ("when deciding, under Rule 12(b)(6), whether to dismiss...the court considers,

8

of course, only the allegations in the complaint.")

*Rule 9(b) Pleading with Particularity*

Allegations for fraud must be pled with particularity, but allegations of "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9.   The pleading requirements of Rule 8(a) also govern pleadings for fraud.  *Id.* at 686-87.  Generally, fraud allegations must include the "who, what, when, where, and how." *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

*Applicable Pleading Standards*

Plaintiff asserts that state procedural law governs pleading requirements for purposes of a motion to dismiss after removal, citing *Tompkins v. Cyr*¸202 F.3d 770, 787 (5th Cir. 2000)*.* However, *Tompkins* concerned sanctions under Texas Rule of Civil Procedure 13 based on a Texas state court filing made in bad faith and filed prior to removal to federal court.  *Id*. The court found that when determining if sanctions should be applied regarding the state court pleading, the Texas rule on sanctions should be applied.  *Id*.  The procedural framework in this case is distinguishable.

Furthermore, "[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 437, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974). The Fifth Circuit has rejected the notion that state procedural rules apply to the sufficiency of pleadings after removal*. See Provident Financial Inc. v. Strategic Energy, LLC.*, 404 F. App'x 835, 840 (5th Cir. 2010) (holding that "the Federal Rules of Civil Procedure govern how a party must plead [a state] defense in federal court").   District courts routinely apply *Iqbal* and *Twombly* to Rule 12(b)(6) motions to dismiss in cases removed from state court and in which the pleadings have not been amended. *See Itzep v. Academy, Ltd.*, No. A-12-CV-197-LY, 2012 WL 1965669, 2012 U.S. Dist. LEXIS 75359 at *8-*9 (W.D. Tex. May 30, 2012)

(internal citations omitted).  The Court concludes that federal pleading standards govern the plaintiffs' causes of action in analyzing the motion to dismiss.

       B.      Application to Plaintiffs' Claims

*Vicarious Liability*

       Plaintiffs' petition asserts that the defendants are responsible for the tortious and negligent acts of their employees.  Here, the plaintiffs contend that any alleged acts of the defendants' employees are imputed to the defendants.  They further aver that "these employees and their acts...were in the course and scope of employment with" or were "on a mission on behalf of" the defendants.  *See Original Petition,* at p. 4.  In support, the plaintiffs assert the legal theories of joint enterprise and respondeat superior.  *Id.* at pp. 4-5.

       Under Texas law, an employer may be vicariously liable for the tortious acts of an agent or employee if the acts are within the course and scope of employment.  *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007).  Vicarious liability can be imposed on a defendant under the theory of joint enterprise.  O'CONNOR'S TEXAS CAUSES OF ACTION 1214 (2012).  The theory of joint enterprise liability is to make each party to the enterprise the agent of the other and therefore to hold each party responsible for the negligent or tortious conduct of the other.  *Id. See also Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974).  The essential elements necessary for establishing joint liability based on joint enterprise are (1) an agreement, (2) a common purpose, (3) a community of pecuniary interest, and (4) an equal right of control.  *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008).

       Relatedly, under the theory of respondeat superior, an employer is vicariously liable for the torts of an employee acting within the scope of employment even though the employer did not personally commit the tort.  *See* MICHOL O'CONNOR, O'CONNOR'S TEXAS CAUSES OF ACTION 1181 (2012) (collected citations omitted).  To establish liability under the theory of respondeat superior,

the plaintiff was show that (1) the plaintiff was injured as the result of a tort, (2) the tortfeasor was an employee of the defendant, and (3) the tort was committed while the employee was acting within the scope of employment. *Id.*

Here, the plaintiffs have not  pled the necessary elements or sufficient factual support to sustain vicarious liability based on joint enterprise or respondeat superior.   The statements in plaintiffs' pleading referencing vicarious liability are broad and boilerplate without specific factual allegations.   The plaintiffs have not pled any kind of agreement between the defendants and their employees.   The plaintiffs, therefore, have not pled facts which rise above the speculation level as to the allegation of a joint enterprise.  They also have failed to plead facts specifically regarding the defendants' employees which would support a theory of liability based on respondeat superior.  The vicarious liability claim is based solely on unwarranted factual inferences.  Any claim for joint or vicarious liability asserted against the defendants must therefore be dismissed.

*Breach of Contract*

The petition asserts that Chase breached a contract to modify the terms of the original mortgage contract for the Allisons' residence.   Under Texas law, the elements of a breach of contract claim include: (1) existence of a valid contract; (2) plaintiff's performance or tender of performance; (3) defendant's breach of the contract; and (4) the plaintiff must incur damages as a result of the breach.  *Prime Prod. Inc. v. SSI Plastics*, 97 S.W.3d 631, 636 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (internal citation omitted).   A plaintiff who seeks to enforce an alleged oral contract has the burden of proving that the statute of frauds is satisfied.  *See  Brandon v. Wells Fargo Bank, N.A.*, No.4:11-CV-261, 2011 U.S. Dist. LEXIS 145812, 2011 WL 6338832, at *14 (E.D. Tex. Nov. 30, 2011) (Mazzant, J.) (*citing Hugh Symons Group, PLC v. Motorola, Inc.,* 292 F.3d 466, 469 (5th Cir. 2002).

Assertion of the existence of a verbal contract to modify an existing mortgage and promise to refrain from foreclosure may support a valid claim.  See *Brandon,* 2011 WL 6338832, at *14. In *Brandon*, Judge Mazzant addressed issues similar to those presented here.  After the plaintiff lost this job and became arrear in mortgage payments, the defendants allegedly promised to modify mortgage and refrain from foreclosing on the property. Wells Fargo told the plaintiff he qualified for a special program for homeowners who had lost their jobs.  Despite compliance with all requirements to participate in the modification program by the plaintiff and promises that the modification process was ongoing, Wells Fargo sold the mortgage at auction to Freddie Mac and began foreclosure and eviction processes.  *Id*. at *1-6.  In *Brandon*, the court found that the pled facts supported the existence of an oral agreement between the parties, fulfillment of the plaintiff's end of the bargain, a letter from Wells Fargo memorializing the oral agreement, and breach by foreclosure and sale of the property constituted a valid claim for breach of contract.  *Id.*  at *14.

Here, the plaintiffs assert that a contract(s) existed between the Allisons and Chase regarding the modification of the original mortgage loan.  As in *Brandon*, plaintiffs have pled that Chase informed the Allisons that they qualified for a special modification program offered to those affected by Hurricane Ike.  According to the petition, the Allisons were required to submit certain financial documentation and to default on two months of payments prior to the modification.  In response, the Allisons submitted all required documentation and ceased making payments in return for a modification and delayed foreclosure.  As in *Brandon*, the Allisons assert that they have fully performed and fulfilled their end of the bargain by submitting the necessary financial documentation and halting monthly payments at the request of Chase employees.

Reading the petition in the most favorable light, the plaintiffs assert that Chase breached the contract by rejecting payment, failing to execute the modification, foreclosing prior to the execution of the modification, and selling the property to JP Morgan.  They claim damages which include the

loss of their home as well as financial loss incurred as a result of the alleged breach.  Similar to *Brandon*, the factual allegations asserted here constitute a valid claim for breach of contract.  While this case can be distinguished from *Brandon* in that the Allisons have not asserted the existence of a written letter memorializing the agreement, the Allisons have pled facts from which it can be reasonably inferred that an oral agreement for modification existed and defendants breached this agreement by foreclosing prematurely.  Additionally, evidence from the discovery process may prove the existence of a valid claim.  Therefore, the motion to dismiss the breach of contract claim should be denied.

*Detrimental Reliance*

Detrimental reliance is not recognized as a separate tort cause of action under Texas law. *Univ. of Texas Sys. v. Courtney*, 946 S.W.2d 464, 468 (Tex. App.—Fort Worth 1997, writ denied). Detrimental reliance is synonymous with a contractual promissory estoppel action; therefore, the claim as a separate action must fail.  *See id.*

*Promissory Estoppel*

Plaintiffs allege that their reliance on Chase's promise to modify the contract was to their detriment, and Chase's breach of the promise caused them damage, namely the loss of their home. Promissory estoppel makes a promise enforceable even without consideration if (1) the promisor should have reasonably expected the promisee to rely on the promise and (2) the promisee actually relied on the promise to its detriment.  *See* Michol O'Connor, O'Connor's Texas Causes of Action (2012) at 114.  As an independent claim alternative to breach of contract, the elements of a promissory estoppel action include: (1) the defendant made a promise to the plaintiff; (2)  the plaintiff reasonably and substantially relied on the promise to its detriment; and (3) the plaintiff's reliance was foreseeable by the defendant.  *See Henry Schein, Inc. v. Stromboe,* 102 S.W.3d  675, 686 n.25 (Tex. 2002); *English v. Fisher*, 660 S.W.2d 521, 524 (Tex. 1983).

Plaintiffs assert Chase employees promised to enter into a modification agreement regarding the terms of the original loan.  Further, the plaintiffs contend that they stopped making payments at the request of Chase to accomplish the modification process.  In response, Chase foreclosed on the Allisons' home.  Plaintiffs assert that they relied to their detriment (the loss of their home) on promises to modify made by employees of Chase and further state that a reasonable person in their position would not forego mortgage payments absent the promise made by the mortgage company or extenuating circumstances.  Although the defendants contest this fact in their motion, according to the facts pled in the petition, the Allisons stopped making payments after instructed to do so by Chase.  Taking the pled facts as true, the Allisons' allegations are sufficient to sustain promissory estoppel claim and should survive a motion to dismiss.

*Quantum Meruit*

The theory of recovery of quantum meruit is founded on the principle of unjust enrichment. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985).  The elements of quantum meruit include: (1) valuable services rendered or materials furnished; (2) for the defendant; (3) services/materials were accepted by defendant; and (4) reasonable notification that the plaintiff expected to be compensated by the defendant. *Id*. *See also Johnson v. Kruse*, 261 S.W.3d 895, 901 (Tex. App.–Dallas 2008, no pet.).

Defendants argue that the claim should be dismissed because there is no authority supporting the contention that an action in quantum meruit can be based on payment of money. After a review of the applicable case law, the Court agrees.  The Court also notes that the undersigned has already determined that the breach of contract survives dismissal.  Quantum meruit is an equitable remedy which does not arise out of a contract, but it is independent of it.  Based on the facts pled, the Court finds that the motion to dismiss should be granted as to the quantum meruit claim.

14

*Breach of Fiduciary Duty*

 The elements of a breach of fiduciary duty are: (1) existence of a fiduciary relationship between the plaintiff and defendant; (2) defendant breached the fiduciary duty to plaintiff, and (3) the defendant's breach resulted in  injury to the plaintiff or a benefit to the defendant.  *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).  A fiduciary relationship may exist formally as a matter of law, e.g., partnerships, principal-agent, attorney-client.  *See Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App.—Dallas 2009, no pet.).  However, a fiduciary relationship may arise informally from "moral, social, domestic, or personal relationships." *Id*.  Mere subjective trust between the parties is not enough to establish a fiduciary duty.  *Pabich v. Kellar*, 71 S.W.3d 500, 505 (Tex. App.—Fort Worth 2002, pet. denied).  An arm's length transaction is not automatically elevated to the status of a fiduciary relationship because one party placed subjective trust with the other.  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997).  To establish an informal fiduciary relationship, a party must be "accustomed to being guided by the judgment and advice of the other party, and there exists a long association in a business relationship, as well as a personal friendship." *Pabich* at 205.

 Here, the plaintiffs' pleadings are insufficient to establish the existence of the requisite fiduciary relationship.  The Allisons generically plead the existence of the fiduciary relationship, but supply no facts in support.  They plead a naked assertion containing a legal conclusion that the fiduciary relationship existed, which is insufficient under the *Iqbal* and *Twombly* analysis.  The factual matter pled does not establish the existence of a relationship or level of trust that would elevate an arm's length transaction into a fiduciary relationship.  This cause of action must, therefore, be dismissed.

*Negligent Misrepresentation*

The elements of a cause of action for negligent misrepresentation are: (1) representation made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information;  (4) the plaintiff justifiably relied on the representation, and (5) the defendant's negligent misrepresentation proximately caused the plaintiff's injury.  *See McMamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).   The misrepresentation must be a misstatement of *existing fact,* not a promise of future conduct.  *See Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (emphasis added).

Defendants assert that the economic-loss doctrine bars the Allisons' tort claims.  Defendants further claim that "[t]he Texas judiciary has long enforced a state policy against contorting alleged breach of contract claims into tort claims."  *Motion to Dismiss*, at p. 13.  The defendants' motion fails to recognize that the Allisons have pled their tort claims in addition or *in the alternative* to their contract claims.  The undersigned also addresses the inapplicability of the economic loss rule to this cause of action in further detail below.

The statute of frauds bars tort claims when those tort claims have their nucleus in an alleged oral contract which is unenforceable under the statute of frauds.  *See Maginn v. Norwest Mortgage, Inc.*, 919 S.W.2d 164, 169 (Tex. App.—Austin 1996, no writ).  Texas courts have upheld claims for negligent misrepresentation based on facts similar to those pled here when, irrespective of the contract claims, the plaintiffs allege that the defendant never intended to enter into a contract, but represented to the plaintiff that they had.   *See id.  See also Federal Land Bank v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).   *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 169 (Tex.

App.—Austin 1996, no writ).  As in *Sloane* and *Maginn*, the facts pled in the Allisons' petition alternatively suggest that a contract never existed, but employees of Chase represented to them that a modification would occur, without every intending to modify the original terms of the mortgage agreement.

Additionally, the defendants contend that the negligent misrepresentation claim is barred because the promise alleged involves future conduct, *i.e.*, the promise not to foreclose in the future. However, in this case, plaintiffs allege that Chase employees instructed the Allisons to stop making payments in the present, because Chase was *currently* in the process of completing the modification. Taking all facts as true, the plaintiffs' allegations are sufficient to survive the motion to dismiss regarding the negligent misrepresentation claim.

*Fraudulent Misrepresentation, Fraud and Fraud by Nondisclosure*

The distinction between negligent misrepresentation and fraudulent misrepresentation is the mens rea element.  The elements of a fraud claim include (1) a material misrepresentation by defendant, (2) that was false, (3) either knowingly false or asserted without knowledge of the truth; (4) intent that plaintiff act upon the information; (5) the plaintiff relied on the representation and (6) plaintiff injured as result.  *See Italian Cowboy Partners v. Prudential Ins.,* 341 S.W.3d 323, 337 (Tex. 2011); *Formosa Plastics Corp. USA v. Presidio Eng'rs. & Contractors Inc.,* 960 S.W.2d 41, 47-8 (Tex. 1998).  To satisfy the intent element, the plaintiff need only prove that defendant had reason to expect reliance on the misrepresentation, not that the defendant intended to induce the plaintiff to rely. *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 575 (Tex. 2001).

Reviewing the plaintiffs' petition in the most favorable light, the Court finds that the plaintiffs' causes of action have not been pled with the requisite particularity to support a fraud claim. *See* FED. R. CIV. P. 9(b).  Accordingly, the Court finds that the plaintiffs have failed to state

17

a claim for these causes of action which sound in fraud.  The motion to dismiss the claims of fraudulent misrepresentation, fraud, and fraud by nondisclosure should be granted.

*Tortious Interference with a Contract*

Plaintiffs assert that the defendants willfully and intentionally interfered with valid contracts between the Allisons and each defendant, as well as insurers, vendors, contractors, and taxing authorities.  The elements of tortious interference include: (1) existence of a contract subject to interference; (2) willful and intentional interference; (3) such interference is the proximate cause of the plaintiff's injury; and (4) actual damages/loss.  *Powell Indus. v. Allen*, 985 S.W.2d 455, 457-58 (Tex. 1998).  Additionally, the person inducing the breach may not be party to the contract.  *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995).  The *Allen* court noted the illogical nature of allowing such actions, because the breaching party of a contract would automatically be liable for actions of tortious interference.  *Id.*  Finally, in cases where the defendant is a corporation, the plaintiff must prove that the agent of the defendant inducing the breach acted to serve personal interests, as well as the interests of the corporation. *Id.*

Here, the petition does not sufficiently state a claim for tortious interference.  The Allisons assert that employees of Chase acting intentionally and willfully to interfere with contracts with third parties, such as their contracts for home insurance and utilities.  However, the Allisons have pled no facts that establish this or to show any willful intent on the part of defendants.  The petition includes a generic and formulaic recitation of the elements of the tort, rather than factual.  There are no pled facts related to the employees of Chase acting in their own interests to interfere with the Allisons' contracts with the named defendants or third parties.  The tortious interference cause of action must therefore be dismissed.

*Participatory Liability*

Plaintiffs contend that the defendants and "others" conspired to acquire unlawful possession of the Allisons' home and other property. *See Petition*, at p. 8.  The elements of civil conspiracy include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  The act must be intentional, and there can be no conspiracy to be negligent.  *Id*. at 557.  "Merely proving a joint 'intent to engage in the conduct that resulted in the injury' is not sufficient to establish a cause of action for civil conspiracy." *Id*. at 557 (quoting *Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996)).

Here, the petition alleges a conspiracy between the two named defendants and others. However, the complaint does not include any facts regarding an agreement between the alleged conspirators or the overt act(s) which were the subject of the agreement. The petition only references defendants in the context of the mortgage being sold or transferred and does not include facts yielding a reasonable inference that this was done in response to an agreement to take the Allisons' home unlawfully.   Additionally, the petition fails to name specifically the "others" involved in the alleged conspiracy, much less how these unnamed people/entities conspired to take the Allisons' home. The pleading only makes the naked assertion of the existence of an agreement to unlawfully acquire possession of the property without supporting facts.  Therefore, this claim is insufficient under the relevant pleading standards and must be dismissed.

*Intentional Infliction of Emotional Distress*

The elements of this tort include: (1) The defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant proximately caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *See Kroger Tex. L.P. v. Suberu,* 216 S.W.3d 788, 796 (Tex. 2006); *Twyman v. Twyman*, 855 S.W.2d

619, 621 (Tex. 1993).  To satisfy the second element, the conduct alleged must be so outrageous

that it would be considered "utterly intolerable in a civilized community" beyond what a reasonable

person could be expect to endure, and may include a range of hostile emotions, such as fright,

horror, grief, disappointment, anger, worry, or despair.  *Twyman,* at 621.  The requirements to prove

a claim for IIED are "exacting" and a defendant's conduct is not extreme and outrageous just

because it is tortious or otherwise wrongful.  *See Creditwatch, Inc., v. Jackson*, 157 S.W.3d 814,

815 (Tex. 2005); *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001).

    Here, the plaintiffs contend that actions by the employees of defendants constituted

outrageous and extreme conduct, and that conduct led to the emotional distress suffered by the

Allisons.  Additionally, the Allisons assert that the defendants acted intentionally, recklessly, or

knowingly.   The complaint alleges that Chase employees falsely represented that the Allisons

qualified for a special program for loan modification, and the program was being offered

specifically to those impacted by Hurricane Ike.  However, the Court finds that these allegations do

not adequately support the exacting requirements of a claim for IIED.  The alleged facts regarding

defendants' conduct do not establish that the defendants acted extremely or outrageously.   The

conduct must be so outrageous in character, and so extreme in degree, as to go beyond on possible

bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community.

*See Tiller v. McClure*, 121 S.W.3d 709, 713 (Tex. 2003).  The facts pled here do not support such

a finding of outrageousness Accordingly, the IIED cause of action must be dismissed for failure to

state a claim.

    *Negligence*

    Plaintiffs assert that the foreclosure and acquisition of their property was negligent and

proximately caused their injury, *i.e.*, the loss of their home, emotional distress, and other pecuniary

losses.  The elements of negligence include: (1) existence of a legal duty; (2) breach of that duty;

(3) damages; and (4) the breach is the proximate cause of plaintiff's injuries. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009); *Doe v. Boys Clubs*, 907 S.W.2d 472, 477 (Tex. 1995). The components of the proximate cause element are: (1) cause in fact; and (2) foreseeability. *Western Invs. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Cause in fact is when the act or omission was a substantial factor in bringing about the injury, and without it, the harm would not have occurred. *See Del Lago Partners v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010). The foreseeability requirement is met if a reasonable person "should have known of the anticipated the danger created by a negligent act or omission. *Boys Club*, at 478.

Here, the factual allegations in the petition are threadbare regarding a general negligence claim. The plaintiffs do no specifically name any legal duty or how the defendants breached that duty. The Allisons have made additional claims in negligence regarding Chase's duties as an employer. The only duty that can be inferred from the petition is the result of the contractual agreement between the parties; therefore, the claim would be barred by the economic loss doctrine, as discussed below.

*Negligence Per Se*

Negligence per se applies when the courts have determined that the violation of a particular statute is negligence as a matter of law. *See Parrot v. Garcia*, 436 S.W.2d 897, 900 (Tex. 1969). In these situations, the standard of care is defined by the statute itself rather than by the reasonably prudent person standard that applies in general negligence actions. *See Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997).

Here, the Allisons assert that the defendants are liable for negligence per se. However, the pleading does not factually allege the violation of a specific statute, much less state how courts have determined that statute to establish negligence per se. Therefore, the factual allegations are insufficient to survive a motion to dismiss.

*Conversion*

Plaintiffs assert that the defendants converted not only their home, but also documents submitted to Chase during the modification process.  The necessary elements include: (1) plaintiff owned, had legal possession, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) defendant refused plaintiff's demand for return of the property. *Automek, Inc. v. Orandy*, 105 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2003, no writ.)

Defendants' motion is correct in stating that Texas does not recognize a tort for the conversion of real property.  *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex. App.—Austin 1992, no writ).   Additionally, the Allisons' claim that defendants converted documents and other materials must fail.  There are no pled factual allegations that they requested that the documents or other materials be returned.  Further, there are no allegations in the petition that the defendants refused such a request.

Finally, relying on *Graves v. Deutsch Bank Nat'l Trust Co*., the Allisons assert that the application of improper fees constitutes conversion. No. 2:10–CV–00183–J, 2011 WL 2119189, at *3-4, (N.D. Tex., Amarillo May 27, 2011). However, in *Graves*, the court never acknowledges the validity of this type of claim, they merely state that any conversion claim under state law would be barred by the statute of limitations. *Id*.  In applying and charging fees to the Allisons' account, Chase has not exercised dominion and control over any property owned or in the possession of the Allisons. Chase has merely charged an account, which is basically a request for payment.  For these reasons, the defendants' motion to dismiss the conversion claim should be granted.

*Theft Liability Act*

Plaintiffs asserts that the defendants are liable for the wrongful appropriation of their property under the Texas Theft Liability Act (the Act).  The elements of a Theft Liability Act claim are comprised of the elements of the alleged violation of the Texas Penal Code under which the claim is brought.  *See Mid-Town Surgical Center, LLP, v. Blue Cross Blue Shield of Tex.*, No. H-11-2086, 2012 U.S. Dist. LEXIS 102789 at *11-*12 (S.D. Tex. July 24, 2012).  The Act allows for recovery of actual damages and up to $1000 in additional damages from a person who commits "theft."  TEX. CIV. PRAC. REM. CODE ANN. § 134.005 (West 2011).  The Act defines theft as "unlawfully appropriating property or unlawfully obtaining services as described by [the Texas Penal Code]."  TEX. CIV. PRAC. & REM. CODE § 134.002(2).  The Penal Code defines "appropriate" as "to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another, or to acquire or otherwise exercise control over property other than real property."  TEX. PENAL CODE ANN. § 31.01 (West Supp. 2012).

Plaintiffs contend that the defendants or their employees unlawfully appropriated the Allisons' property in violation of the Texas Penal Code and the unlawful appropriation was made with the intent to deprive the plaintiffs of their property.  However, the plaintiffs do not identify facts in support of the required intent under the statute.  To state a claim under the Act, the plaintiffs must show that the defendants possessed the requisite intent, which means that the defendants would have had a conscious desire or objective to deprive the plaintiffs of their property.  *See Montgomery v. SunTrust Mortgage, Inc.*, No. 3:10-CV-733-F, 2012 WL 1353087, 2012 U.S. Dist. LEXIS 65346 at *22 (N.D. Tex. April 19, 2012) (citing *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.–Houston [1st Dist.] 2007, no pet.); *Sellers v. Gomez*, 281 S.W. 3d 108, 115 (Tex. App.–El Paso 2008, no pet.).  There are no pled facts sufficiently stating such a conscious intent on the part of the defendants.  This claim must also be dismissed under Rule 12(b)(6).

*Trespass to Real Property*

Trespass to real property is defined as an unauthorized entry upon the land of another. O'CONNOR'S TEXAS CAUSES OF ACTION 971 (2012) (collecting cases). The elements include: (1) plaintiff owns or has a lawful right to possess the real property; (2) defendant entered the plaintiff's land; (3) the entry was physical, intentional, and voluntary; and (4) caused injury to the plaintiff. *Wilen v. Falkenstein*, 191 S.W.3d 791, 797-98 (Tex. App.—Fort Worth 2006, pet. denied). The Allisons' petition does not include any facts alleging that any of the named defendants *physically entered* the property in question. In their response, the Allisons concede that the factual allegations in the pleading are insufficient. This claim must be dismissed.

*Private Nuisance*

Plaintiffs assert that the defendants interfered with their interest in the home, and the defendants' actions constitute a private nuisance under state law. Private nuisance is nontrespassory invasion of another's interest in the private use and enjoyment of land, and it may include "emotional harm to a person from the deprivation of the enjoyment of his property through fear, apprehension, or loss of peace of mind." *Kane v. Cameron Int'l Corp.*, 331 S.W.3d 145, 147-48 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A person with a right to occupy land can maintain an action for private nuisance. *See Schneider v. Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 268 n.2 (Tex. 2004).

Here, the facts pled indicate that the Allisons had an interest in their home and the defendants interfered with that interest by prematurely foreclosing on the property. The Allisons contend that the premature foreclosure caused emotional harm by depriving the Allisons enjoyment of their home, the fear of foreclosure, and loss of peace of mind. For these reasons, the motion to dismiss the private nuisance claim should be denied.

24

*Negligent Hiring, Entrustment, Retention, and Supervision*

Plaintiffs assert four causes of action for negligence in the employment context:  hiring, entrustment, retention, and supervision.  Texas recognizes a tort action for negligent hiring and entrustment.  *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240-41 (Tex. 2010).  Employers have a duty to investigate, screen, and supervise employees, and a breach of this duty creates liability for any injury caused as a result of the breach.  *Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 796 (Tex. 2006).  Texas law generally treats negligent hiring, supervision, training, or retaining an employee as one tort, based on direct rather than vicarious liability.  *See* O'CONNOR'S TEXAS CAUSES OF ACTION 705 (2012) (collecting cases).  The elements of a cause of action for negligently hiring, supervising, training, or retaining an employee are (1) the employer owed the plaintiff a legal duty to hire, supervise train, or retain competent employers, (2) the employer breached that duty, and (3) the breach proximately caused the plaintiff's injury.  *See TXI Transp*., 224 S.W.3d 870, 901 (Tex. App.–Fort Worth 2007), *rev'd on other grounds*, 306 S.W. 230 (Tex. 2010); *see also EMI Music Mexico v. Rodriguez*, 97 S.W.3d 847, 858 (Tex. App.–Corpus Christi 2003, no pet.)

Here, the Allisons assert that Chase is liable for the negligent actions of its employees.  However, the factual allegations included in the petition are void of actions on the part of Chase employees who breached the duties imposed on employers by law.  The factual allegations do not include information about specific employees or information about those employees that would have been revealed through prior investigation which indicated that the employees created a risk.  There is no specific allegation related to the supervision of employees that would constitute a breach.  The petition includes naked assertions of negligence without any specific factual allegations to support this claim.  The motion to dismiss these claims must be granted on the plaintiffs' cause of action for negligent hiring, supervision, training and retention of employees.

*Gross Negligence and Exemplary Damages*

The Allisons assert that the defendants' actions in foreclosing on their home amounts to gross negligence.  The elements of gross negligence includes: (1) act or omission involves an extreme degree of risk when taking into account the probability and magnitude of harm to others; and (2) defendant must have subject awareness of the risk and act with deliberate indifference.  *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).  Extreme risk is construed as meaning likelihood of serious injury. *Id.*

The Court has already found that the Allisons have insufficiently pled intent on the part of the defendants and that the allegations of standard negligence are insufficient.  The same is true for the gross negligence claim based on the pled facts.  This cause of action and the request for exemplary damages should be dismissed.

*Malicious Prosecution*

Plaintiffs assert that the defendants' institution of the foreclosure proceedings constitutes malicious prosecution.  The elements of malicious prosecution include: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages.  *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996).  Termination of a proceeding in a plaintiff's favor includes waiting for the completion of the appellate process.  *Id* at 214.  Plaintiffs must prove special damages, i.e., physical interference with person or property. *Id*. at 215.

Here, the Allisons state that they are parties to a forcible detainer proceeding (Cause No. E4101) in Orange County, which was instituted by Chase.  The plaintiffs further allege that they defendants acted with malice when instituting the proceeding and that there was no probable cause to institute the proceeding. *See Petition*, at p. 15.  Plaintiffs contend they sustained damages as a

result.  *Id.*  However, this is merely a formulaic recitation of the elements for this cause of action.

The plaintiffs have also failed to plead specific facts in support of the elements other than to state

that the defendants initiated the detainer proceeding in Orange County.  Furthermore, there is no

statement in the pleading to indicate that these proceedings were terminated in favor of the Allisons,

so the fifth element has not been pled, much less supported by facts.  The plaintiffs have failed to

state a claim for malicious prosecution.

*Defamation*

Plaintiffs assert that the defendants are liable for defamation because the defendants

published statements by oral or written communication asserting defamatory facts.  Their response

indicates that this claim is based on false statements the defendants made regarding the Allisons'

financial status which have damaged their reputation and credit rating.

The elements of defamation for a private plaintiff include: (1) defendant published a

statement; (2) that was defamatory concerning the plaintiff; and (3) defendant was negligent as to

the truth of the statement.  *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). To

meet the third element, a private plaintiff must prove that the defendant knew or should have known

that the statement was false. *Id*. Citing *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819

(Tex. 1976).

Defendants assert that the statements were made during foreclosure proceedings, and

foreclosure proceeding are quasi-judicial and are therefore privileged.  No civil remedy is available

for absolutely privileged communication, and quasi-judicial proceedings are absolutely privileged.

*Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, L.L.P.*, 291

S.W.3d 448, 451 (Tex. App.—Ft. Worth 2009, no pet.).  In *Purdue*, the court found that statements

made to a city council, as well as memos prepared in anticipation of the meeting were quasi-

judicial. *Id.*

27

In any event, the petition is insufficient on its face to support a defamation claim.  It is devoid of specific facts about statements made by the defendants or their employees, how those statements were false, or how they harmed the plaintiffs specifically.  The Allisons contend in their response that their credit rating and financial status has been harmed.  There are no facts in the petition supporting this.  Furthermore, there are no pled facts linking any false statements by the defendants to this alleged harm.  The petition is vague regarding the actual defamatory statements  The petition only includes the naked assertion that Chase made "defamatory statements," but fails to state what those statements included.  Further, the petition to state the third party to whom the statements were published.  The pleading only alleges communications between the Allisons and Chase employees, and outside of the foreclosure proceedings and sale of the mortgage to JP Morgan, no third party is mentioned.  For these reasons, the defendants' motion to dismiss the defamation claim should be granted.

*DTPA*

Plaintiffs assert that the defendants' actions violated the Texas Deceptive Trade Practices – Consumer Protection Act (DTPA).  The DTPA was enacted to protect consumers and allow recovery when certain deceptive acts cause economic damages.  TEX. BUS. & COM. CODE ANN. § 17.50 (West 2011).  To recover under DTPA, a plaintiff must prove: (1) plaintiff is a consumer; (2) defendant is a proper defendant under DTPA; (3) defendant committed a violation of the statute; and (4) the violation caused plaintiff damages. *Brandon,* at *8 (applying Texas state law in a diversity action).  Consumer" is limited to individuals or entities who purchase or lease goods or services.  TEX. BUS. & COM. CODE ANN. § 17.45 (West 2011).  The determination of whether the plaintiff is a consumer is a question of law, and courts look at the object of the transaction to make the determination. *Id*. at *9.  For DTPA purposes, Texas courts have held that a purchaser of a loan could sue the bank under the DTPA for an unconscionable course of conduct in foreclosing on a

28

home.  *See Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983).  The courts focus on the transaction from the perspective of the purchaser and have concluded that when the objective of the transaction is to actually acquire a car or house, for example, rather than just borrow money, the plaintiff may qualify as a consumer.  *See La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 566-67 (Tex. 1984).  The plaintiffs have alleged facts which, read in the most favorable light, support their status as consumers under the DTPA.  They have also pled facts throughout the petition in the context of this and other causes of action which could sustain a claim for DTPA violations.  The Court concludes that the motion to dismiss should be denied as to the DTPA claim.

*Wrongful Foreclosure*

To prevail on a wrongful foreclosure claim, a plaintiff must prove: (1) a defect in the foreclosure sale proceedings; (2) grossly inadequate selling price; and (3) a causal connection between the defect in the sale proceedings and the selling price.  *See Sauceda v. GMAC Mortgage. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank—Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.—Houston [14th  Dist.] 1989, writ denied)).  Nowhere in the plaintiffs' petition do they set forth specific facts in support of these elements.  The plaintiffs do not state when or how  the foreclosure actually took place, that there was a grossly inadequate selling price, or that there was a defect in the foreclosure proceedings.  The plaintiffs have failed to state a claim for relief on the wrongful foreclosure cause of action.

*Economic Loss Doctrine*

Defendants argue that the economic loss rule bars all of the Allisons' claims in tort, because any liability stems from the original mortgage contract.  The economic loss rule bars recovery for economic loss alone in *some* tort actions.  *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011).  Initially, the economic loss rule was applied only in product liability

cases when the value of the defective product purchased was the only loss incurred, because a warranty action is a better avenue for recovery. *Id*. However, it has been expanded to apply in negligence cases if the breach alleged is related to a duty imposed by a contract rather than law. *Id*. In sum, the Texas Supreme Court has only applied the economic loss rule to cases involving defective products or failure to perform a contract. *Id*. at 418. Pure economic loss alone is recoverable in certain tort actions, including: negligent misrepresentation, malpractice,  breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death, business disparagement, and some statutory causes of action. See id. at 418-19. (Internal citations omitted). Here, the Allisons have asserted several tort claims that are not barred by the economic loss rule. To the extent that any of these claims survive dismissal under Rule 12(b)(6) as discussed herein, the Court overrules the defendants' arguments on economic loss as to these claims. These actions allow for the recovery of economic loss alone.

Regarding the negligence claims, the Allisons claim damages that do not arise from a breach of a duty created by the original mortgage contract. Here, damages arising from the breach of contractual duties would be limited to the loss of the home that was the subject of the original mortgage. The Allisons assert sustained damages for emotional distress and harm to reputation, goodwill, and credit rating, as well as punitive damages as punishment for intentional, reckless and knowing wrongful acts. The Allisons claim financial damages that do not arise from the breach of the original mortgage contract, such as attorney's fees to defend the action at the basis of the malicious prosecution claim. Here, the nature of the injury does not stem from the breach of the contract alone, but from actions which allegedly that caused harm to the Allisons outside of the breach of a contractual duty. Accordingly, to the extent that any of the negligence torts survive dismissal as discussed herein, the economic loss rule may apply. However, this issue may be

reserved for determination at the liability and damages stage rather than on a motion for dismissal on the pleadings.

### Conclusion and Order of the Court

For the reasons stated herein, the Court **ORDERS** that the defendants' motion to dismiss is granted as to all of the plaintiffs' causes of action pled in their original petition except for the following causes of action:  breach of contract, promissory estoppel, negligent misrepresentation, private nuisance, and the DTPA claim.  Those causes of action remain pending.   All other causes of action asserted in the plaintiffs' original petition are dismissed with prejudice for failure to state a claim upon which relief can be granted.

**SIGNED this the 2nd day of October, 2012.**


KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE